IN THE MATTER OF THE PETITION OF THE BUFFALO, NEW YORK AND PHILADELPHIA RAILROAD COMPANY, APPELLANT, FOR THE APPOINTMENT OF COMMISSIONERS TO APPRAISE LANDS OF GEORGE S. McINTOSH, RESPONDENT.

*The second report of railroad commissioners— may be set aside for fraud or the misconduct of the commissioners — 1850, chap. 140, sec. 18 — what improper acts on the part of the commissioners will require the report to be set aside.*

The provision contained in section 18 of chapter 140 of 1850, to the effect that the second report of commissioners appointed to appraise the damages to be paid for land taken for railroad purposes shall be final and conclusive, does not prevent the court from inquiring into the fairness and regularity of the proceedings before the commissioners, and from setting aside their report for fraud or misconduct.

The second report of commissioners was set aside in this case, because of their improper conduct in going upon the lands to be taken, in company with the land-owner and his attorney, and there examining a map produced by the former and listening to his explanation thereof, in the absence of the agent of the company, and its attorney, who were then, to the knowledge of the commissioners, on their way to meet the commissioners and view the premises.   It appeared that one of the commissioners in this case rode from a village to the farm to be viewed,

with, and in a carriage provided by, the landowner; that one of them then took supper at the latter's house and was sent home in a carriage furnished by him, and that another accepted from the landowner a sum of money for his services and expenses, in excess of the amount allowed by statute, and which was understood to be so at the time.

*Held*, that such conduct was improper and required the report to be set aside.

APPEAL by the petitioner from an order of the Erie Special Term, denying a motion to set aside the report of the commissioners herein awarding to the respondent the sum of $1,000 damages for the right of way through his lands.

*Ansley & Davie*, for the appellant.

*George H. Phelps*, for the respondent.

SMITH, P. J.:

The report which the petitioner seeks to set aside is the second report of commissioners in this cause, a former report having been set aside by the court. The statute under which the proceedings were had provides that the second report shall be final and conclusive. (Laws 1850, chap. 140, § 18.) But that provision does not preclude the court from inquiring into the fairness and regularity of the proceedings before the commissioners and from setting aside their report for fraud or misconduct. (*In the Matter of the Application of the Prospect Park and Coney Island R. R. Co.*, 20 Hun, 134; *In the Matter of the Application of the same Company*, 24 id., 199.)

It appears from the papers before us that the respondent's premises, upon which the company seeks to obtain a right of way, consist of a farm of 500 acres situated about five miles from the village of Allegany in the county of Cattaraugus. On the day when the commissioners viewed the premises they met at the village of Allegany and went from there to the farm in a carriage with the landowner, his counsel and a driver. When they left the village, the attorney of the company and Mr. Adams, an agent of the company, who had been employed in getting the right of way, were there and were intending to go to the farm to attend the commissioners while viewing the premises, but by reason of delay in getting a conveyance they did not start till some time after the other party had left. The parties differ somewhat as to the interval that elapsed

after the departure of the first carriage before the second started, it appearing by the affidavit's of those representing the company, that they were about half an hour behind the others, while the respondent states in his affidavit that the carriage containing Mr. Adams and his party was but little behind his own. But however that may be, all the witnesses agree that immediately on the arrival of the first carriage at the farm the owner of the land, without waiting for the other party to come up, began to point out to the commissioners the exterior lines and boundaries of his farm; produced, at the request of his counsel, a map of the same, which he had prepared, spread it out before the commissioners, and, to use his own words, "began to call the attention of the parties present to the same, and the shape and general lay of such of the land comprising the farm as was not visible from that point." That the map thus exhibited was not conceded by the opposite party to be correct, is shown by the fact that on his arrival Mr. Adams produced another map, and some dispute then occurred. And that what took place before the arrival of the second carriage was not without its effect upon the minds of the commissioners, is to be inferred from the fact that very soon after the second carriage came up the commissioners expressed themselves as having seen sufficient and were ready to return; although upon being urged, they did go upon the rear of the farm and make further examination. It is apparent from the affidavits that the respondent and the commissioners knew that Mr. Adams and his party were on their way to the farm, and might be expected to arrive soon. In these circumstances we think it was irregular on the part of the commissioners to proceed to a view of the farm under the guidance of the landowner, and in doing so to examine his map and to listen to what he chose to say on the subject in the absence of the representatives of the railroad company. The view was a part of the duty enjoined upon the commissioners by the statute for the purpose of informing themselves upon the question they were to decide. It was a judicial duty, to be performed fairly and with equal regard to the rights of both parties. Whatever they permitted one party to say to them in regard to it, while they were engaged in the performance of it, or in regard to the case, the other party should have been permitted to hear and to make pertinent reply to.

The case is not that of a hearing of one party only by default of his opponent. The company did not make default, and it was not treated by the commissioners as being in default. As has been said, it was known that their attorney and agent were on the way, and might be expected to arrive soon, and when they came they were heard. The irregularity was that the hearing was begun before they arrived, and as it is impossible to say that what then took place did not affect the minds of the commissioners, the irregularity is fatal to the report.

In several other respects, there was conduct on the part of the commissioners or some of them which, although doubtless prompted by no wrong motive, ought to have been avoided, and cannot be approved. The statute provided a compensation for the services and *expenses* of commissioners while engaged in the discharge of their duties. That being the case, they ought not to accept gratuities from either party, by way of relief from the expenses to which they are necessarily subjected. It appears that in this case the commissioners rode from the village to the farm in a carriage provided by the landowner; one of them took supper at the landowner's house, and was then sent to his own home in a carriage which the landowner furnished; and another, after the report was signed, accepted from the landowner a sum of money for his services and expenses, in excess of the amount allowed by statute and which was understood to be so at the time. The acts referred to probably had no effect upon the result in the present case, but it will not do to make a precedent of them, for if such practices were to become common, it would be easy for designing men to make them a cover for corruption.

On the whole we think the order of the Special Term should be reversed, the report set aside, and the case sent to other commissioners to be appointed on motion at Special Term, with ten dollars costs and disbursements.

HARDIN and BARKER, JJ., concurred.

So ordered.